IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br><br><br>TOMMY L. ANDERSON, Sr., a/k/a "Insane Tommy,"<br>MARCUS BENTLEY, a/k/a "Breed,"<br>TRACY HARRIS, a/k/a "T Dog,"<br>CLINTON A.D. KNIGHT, a/k/a "Tone,"<br>ARMAND LITTLE, a/k/a "Clown,"<br>STEVEN S. NOVOTNY, a/k/a "Loco,"or "Little Loco,"<br>CHESTER RANDALL, Jr.,<br>a/k/a "Insane June,"<br>TRENA R. RIDGE, a/k/a "Blue,"<br><br>        Defendants. | Case No's 07-10143-01, -02, -03, -04,<br>-05, -06, -07, -08-JTM |

MEMORANDUM AND ORDER

     The present order addresses those motions currently on file and ripe for resolution. Other motions will be addressed following their submission to the Court at the hearing to be conducted September 2, 2008.

**A. Motions for Bills of Particulars**

Defendants Anderson, Knight, and Randall have moved for bills of particulars. (Dkt. No's 121, 132, 201). This court has previously denied similar motions in Case No. 07-10142-JTM by defendants Troy Langston and Campbell (Dkt. No's 421, 453). Anderson has identified 33 matters he seeks to have further clarified in a bill of particulars. Anderson argues that a bill of particulars is necessary for him to prepare his defense, and that the information provided is not sufficient for the defense to prepare adequately. Additionally, Anderson raises concerns regarding double jeopardy, and a duplicitous indictment. Anderson relies in particular on Judge Rogers's recent opinion in *United States v. Johnson*, No. 05-40107-RDR, 2006 WL 2802261 (D. Kan. 2006). Knight sets forth a list of 26 matters in his proposed bill of particulars, and argues that a bill of particulars is necessary for him to prepare his defense, and to avoid duplicitous charges. The government opposes both motions, and in particular with respect to Knight, sets forth in detail how much of the information requested has already been provided. Randall notes the general nature of the charges against him. (Dkt. No. 201).

Generally, an indictment is judged "by practical rather than technical considerations" and is held to only minimal constitutional standards. *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997). "An indictment is sufficient if it contains the elements of the offense charged, putting the defendant on fair notice of the charge against which he must defend and if it enables a defendant to assert an acquittal or conviction in order to prevent being placed in jeopardy twice for the same offense." *United States v. Poole*, 929 F.2d 1476, 1479 (10th Cir. 1991).

The district court has broad discretion in deciding whether to grant a motion for bill of particulars. *United States v. Edmonson*, 962 F.2d 1535, 1541 (10th Cir. 1992). The purpose of a bill of particulars is to supplement the allegations in the indictment when necessary to: (1) inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense; (2) avoid unfair surprise to the defendant at trial; and (3) preclude a second prosecution for the same offense. *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996) (quotations omitted); *United States v. Anderson*, 31 F. Supp. 2d 933, 937-38 (D. Kan. 1998).

Further, the purpose of the bill of particulars is to minimize the defendant's surprise to the substantive facts of the charges, but not to obtain discovery, evidentiary detail of the government's case, or information regarding the government's legal theories. *See United States v. Hopkins*, 716 F.2d 739, 745 (10th Cir. 1982). "Unless the request for the bill of particulars shows, on its face, that the failure to grant the request would result in prejudicial surprise, the preclusion of an opportunity for meaningful defense precaution, [or double jeopardy problems,] defendant has the burden of showing that his or her request meets one of the three criteria." *Anderson*, 31 F. Supp. 2d at 938.

Judge Rogers's decision in *Johnson* was tied to the factual circumstances in that case, and is not controlling here. As Judge Rogers noted, "[t]he threshold for obtaining a bill of particulars in the Tenth Circuit is high." *Johnson*, 2006 WL 2802261, at *2. As noted earlier, the decision of whether to grant such a motion is reserved to the discretion of the court.

In this case, the superseding indictment largely is framed in the statutory language, and is specific to each count. Further, the conspiracy charge is particularized to a degree beyond customary expectation. In addition, the arguments advanced by Knight, Anderson, and Randall are virtually

identical to the those previously advanced by Campbell and Langston in Case No. 07-10142-JTM, and previously rejected by the court. The court hereby denies the defendants' motions.

**B. Review of Detention**

Defendants Anderson and Little have filed motions for relief from the United States Magistrate Judges's orders of detention. (Dkt. No's 79, 164). The Magistrate Judge ordered that the defendants be detained without bond. (Dkt. No. 40).

The factors used to determine whether continued detention is appropriate are set forth in 18 U.S.C. § 3142(g). Under 18 U.S.C. § 3142(e), a person charged with a crime of violence is presumed a flight risk and a danger to the community. This presumption may be rebutted by proof that the defendant is not a flight risk or dangerous. *United States v. Stricklin*, 932 F.2d 1353, 1354-55 (10th Cir.1991).

The court has reviewed all the circumstances of the case and finds that the prior detention orders should be upheld. On similar grounds, the court has previously denied defendant King's motion for reconsideration, and the court concludes that the same result should obtain as to defendants Anderson and Little. With respect to defendant Anderson, given the seriousness of the offenses charged, the defendant's prior criminal history, including a prior felony conviction, his prior failures to appear before other courts, and his lack of employment, the court finds that the defendant has neither rebutted the presumption for detention, nor shown any error in the determination of the United States Magistrate.

With respect to defendant Little and the issue of his potential danger to the community, the court notes that a firearm was recovered near the defendant in October, 2006. Otherwise, Little has

failed to demonstrate that he would not pose a flight risk or would not represent a danger. He has not rebutted the presumption of detention, nor has he shown that the decision of the United States Magistrate was in error. Accordingly, the court also denies Little's motion.

### C. Motion for Information on Confidential Informant

There are two motions before the court seeking information as to confidential informants. Defendant Anderson requests information on the confidential informants (Dkt. No. 134). Specifically, he requests that the government be compelled to disclose information of any and all confidential informants or cooperating individuals that have assisted or are expected to assist the government in the investigation or prosecution of this matter. He argues that the information requested is vital to his chance for a fair trial, and that the information should be turned over because it is likely material which should be produced pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).

Defendant Knight has submitted a similar motion. (Dkt. No. 197). Knight seeks information about the identity of the confidential informant who made the controlled buy of crack cocaine at the residence located at 1332 North Volutsia, Wichita, Kansas, leading to the issuance on September 13, 2004, of a search warrant for that residence, as well as the witnesses used by the government in support of the April 27, 2007 Affidavit in Support of Search Warrant.

The government has responded that defendants have failed to meet the burden of showing that the early disclosure of the witnesses' identities is relevant or essential to a fair determination of this case. Further, the government asked that this court find that the government's interest in keeping the witnesses' identities confidential, for the time being, outweighs the defendant's right to disclosure.

The Supreme Court has recognized "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). This privilege is "by no means absolute." *United States v. Brodie*, 871 F.2d 125, 128 (D.C.Cir.1989). When determining whether to disclose the identity of a confidential police informant, the court must balance the public interest in protecting the flow of information in a manner necessary for effective law enforcement against an individual's right to prepare his defense. *Roviaro*, 353 U.S. at 62. In determining whether disclosure is necessary, the court must consider the particular circumstances of the case, including the crime charged, the possible defenses, and the significance of the informer's testimony. *Id*.

As a general rule, "[a] defendant may obtain the identity and whereabouts of an informer if his testimony might be relevant to the defendant's case and justice would be best served by disclosure." *United States v. Leahy*, 47 F.3d 396, 398 (10th Cir.1995). But a defendant seeking disclosure has the burden of proof. *United States v. Sinclair*, 109 F.3d 1527, 1538 (10th Cir.1997). The defendant must come forward with evidence establishing that the *Roviaro* criteria favor disclosure. *United States v. Blevins*, 960 F.2d 1252, 1258-59 (4th Cir.1992). More than suspicion or speculation is needed to meet the defendant's burden. *United States v. Williams*, 898 F.2d 1400, 1402 (9th Cir.1990). Mere speculation about the usefulness of an informant's testimony is not sufficient to warrant disclosure. *Mendoza-Salgado*, 964 F.2d at 1001. "A CI's [confidential informant's] testimony must be shown to be valuable to a defendant; mere speculation is not enough." *United States v. Leahy*, 47 F.3d at 398. "The defendant must explain to the court as precisely as possible what testimony he thinks the informer could give and how this testimony would be relevant to a material issue of guilt or innocence." *Blevins*, 960 F.2d at 1259 (*quoting* 2 Jack B.

Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 510[06] (1991)); *see also United States v. Ridley*, 814 F.Supp. 992, 996 (D. Kan.1993).

The government has represented that none of the material requested by the defendant is *Brady* material, and the court accepts this representation. Further, based on the information supplied by the government the court finds that the information sought by the defendant is relevant, but that production at the present time is outweighed by the interests of the safety of the witnesses in the trial. Given serious nature of the charges against the defendant, including charges of participation in a racketeer influenced and corrupt organization, coupled with specific evidence of potential witness endangerment, the court finds that the interests of justice do not support production of such information. Under such circumstances, the government's interest in continued confidentiality outweighs the defendant Anderson's speculative argument that production might aid his defense. *See United States v. Sinclair*, 109 F.2d 1527, 1538 (10th Cir. 1997).

The court finds that a similar result obtains with respect to the motion by defendant Knight. Here, with respect to the confidential informant who supplied information supporting the 1332 N. Volutsia warrant, that informant did not testify that he dealt with Knight, and Knight is not charged with that particular transaction. Similarly, with respect to the informants supplying information used in support of the 2007 warrant, the defendant has failed to show that the information would be helpful to a defense of the charges filed against Knight, and the court finds that disclosure is not warranted.

**D. Motions Premised on Pre-Trial Publicity**

There are several motions before the court that are premised on the publicity generated by this prosecution. Defendant Knight has moved for a jury questionnaire seeking information as to the effect of such pretrial publicity. (Dkt. No. 209). In addition, defendant Anderson has moved for an intra-District transfer of the present action, seeking a trial in Kansas City, Kansas. (Dkt. No. 188). In the alternative, Anderson asks for a juror questionnaire to be used to seek, to identify and eliminate jurors prejudiced by pretrial publicity. Defendants Knight (Dkt. No. 196) and Little (Dkt. No. 231) have joined in Anderson's motion.

Defendant Anderson submits as grounds for transfer the United States Attorney's September 28, 2007 press release and press conference held the day the indictments were unsealed, a story from the *Wichita Eagle* reporting on the prosecution, and search results showing frequent references to this prosecution or the "Crips" gang generally from the *Eagle* and local televisions stations.

Anderson does not seek transfer to another District, but reassignment for trial in Kansas City, Kansas. This court generally applies the same standard for intra-District transfers as it does for transfers to another District. *United States v. Walker*, 890 F.Supp. 954, 958, n. 5 (D.Kan. 1995).

The court finds that transfer is not justified. Pre-trial publicity may justify a transfer if it is so extensive as to dictate the community's opinion as to guilt or innocence. *United States v. Abello-Silva*, 948 F.2d 1168, 1176 (10th Cir. 1991). The key question is not whether the community has heard of the case, but whether the persons called to be jurors have acquired such fixed opinions that they cannot judge impartially the guilt of the defendant. *Patton v. Yount*, 467 U.S. 1025, 1035 (1984).

Here, the defendant has shown only that the present prosecution has acquired some notoriety in the Wichita community. There has been no showing that notoriety has acquired such power that the court will have difficulty in finding and empaneling an impartial jury. Further, the court notes that by the time of trial, nearly a year will have passed since the initial burst of publicity regarding the case. Such attenuation in publicity is a relevant factor in determining whether a transfer is compelled. *Patton*, 467 U.S. at 1035.

The court finds that any negative effects of pretrial publicity may be cured by careful voir dire of the prospective jurors. In this context, the court will also deny as moot defendants' requests for a juror questionnaire. As a part of its standard practice, the potential jurors will receive a questionnaire relating to the case, and the court will advance questions focusing on pretrial publicity which panel members may have been exposed to. Defendants may submit proposed questions for inclusion into such questionnaire on or before September 14, 2008.

**E. Motions for Extension**

There are several motions for extension of time before the court. Defendant Anderson has moved for an extension of time to file an alibi defense. (Dkt. No. 194). Defendant Knight has joined him in this motion (Dkt. No. 195). Defendant Harris has filed a similar motion (Dkt. No. 199). Defendant Little has joined in all the preceding motions (Dkt. No. 234). And defendant Harris has moved for an extension of time to file pretrial motions (Dkt. No. 216). The United States has not filed any opposition to these requests.

For good cause shown, the court will adopt the following schedule. Any alibi defense shall be filed no later than September 2, 2008. Absent a showing of good cause, any pretrial motion shall be filed no later than September 5, 2008.

**F. Motion for Appointment of Secondary Counsel**

Defendant Anderson has moved for the appointment of secondary counsel (Dkt. No. 208). The motion generally notes the complex nature of this case, coupled with the approaching trial. Anderson states that he would "not intend to bill for duplicate service or court appearances, except for trial as necessary." *Id.* at ¶ 4.

The remedy requested will be denied. The appointment of secondary counsel is generally reserved for capital cases. S*ee* 18 U.S.C. § 3005. Otherwise such an appointment is an extraordinary remedy, and requires a specific showing of need, coupled with a particularized showing that such additional expenditure is likely to yield some tangible benefit to the accused,

In the present matter, Anderson's motion merely recites the acknowledged fact that the present case has been declared "complex," and that trial preparation "could require travel." (Dkt. No. 208, at 1-2). The court finds that Anderson has failed to meet the showing required for the appointment of additional counsel.

Finally, this court has always allowed lawyers within the same firm to work on a case in which one lawyer has been appointed, and has allowed each lawyers to bill for his or her work, so long as both lawyers are not billing for the same work.

**G. Motions to Suppress**

Defendant Knight has two motions to suppress which are currently before the court. In the first (Dkt. No. 154), he seeks to exclude evidence relating to the search by warrant of the house at 1641 N. Lorraine. In the second (Dkt. No. 155), he seeks to exclude evidence relating to search by warrant of the house at 1332 N. Volutsia.

The court finds that the facts are not in any substantial dispute. The search of the house at 1641 N. Lorraine occurred pursuant to a warrant issued by a Sedgwick County District Court Judge. The warrant was supported by an application submitted by Wichita Police Officer Travis Easter, who went to that address earlier that day when investigating a drug complaint. Easter stated that he knocked on the door, and someone inside said "come in." When he entered the house, he smelled marijuana and saw Robin Knight, Clinton Knight's brother, playing a video game on the couch with marijuana in front of him. The police executed the search warrant the same day it was issued, and then obtained a second search warrant for the house after they found firearms, ammunition, and drugs.

The house at 1332 N. Volutsia was searched pursuant to another search warrant. This warrant was supported by a September 13, 2004 application. The application was submitted by Wichita Police Officer Eric Poe. Poe stated that he had been told by a confidential informant that crack cocaine was being sold at the residence. He related that, utilizing the informant, a controlled buy had been made from the house. He stated that the informant had supplied reliable information on frequent occasions in the past.

Knight argues that application for the first warrant was overbroad, and did not set forth detailed facts which would support a finding of probable cause. He contends that the officers

exceeded the scope of the warrant and conducted a general search, and that the plain view and good faith exceptions to a warrant search do not apply.  He argues with respect to the second warrant that the application, warrant and search was overbroad and without restriction or detailed facts, that the search exceeded the scope of the warrant, and that exceptions to the warrant requirement are inapplicable.

The government argues that Knight has no standing to contest the search of either house. Even if he did, it argues, probable cause existed, the officers searched the houses validly pursuant to the terms of the warrants, and that in any event the officers relied in good faith on the existence of the warrants. The warrant requested the discovery of evidence of (a) crack cocaine, (b) drug paraphernalia, (c) U.S. currency associated with the crack cocaine, (d) information relating to the identity of crack cocaine customers or sellers, (e) information about the ownership or occupancy of the house, (f) firearms, and (g) other illicit drugs.  In executing the warrant, officers seized crack cocaine, marijuana, firearms, ammunition, currency, documents, photos, and drug paraphernalia and packaging material.

The government finds that the defendant lacks standing to challenge either search.  Knight identifies no valid privacy interest in either the house at 1332 N. Volutsia or at 1641 N. Lorraine. A defendant may not challenge under the Fourth Amendment the search of a third person's residence.  *United States v. DeLuca*, 269 F.3d 1128, 1131 (10th Cir. 2001). In the absence of such a showing, suppression is not justified.

Even if the court were to find standing existed, it would conclude that the evidence was validly seized.  Because a warrant was issued, this court gives great deference to the determination of probable cause by the issuing magistrate. *United States v. Soussi*, 29 F.3d 565, 568-569 (10th Cir.

1994).

Here, the court finds that in each instance, the warrants were premised on probable cause. In the case of the first search, the probable cause arose from the personal observation by a Wichita police officer of illegal drugs in the presence of the house. In the second, probable cause arose from the information supplied by a reliable confidential informant, coupled with a controlled buy from the residence in question. Based on the information contained in the applications, the warrants reasonably concluded that officers were authorized to look for illegal drugs and other evidence which would aid in determining who was selling such drugs from the residences in question. Further, in each case, the officers acted in compliance with scope of the warrant. There has been no showing of the seizure of any evidence outside the scope of that stated in the warrant, or contraband evidence in plain view seized by the officers executing the warrant.

Defendant Harris moves to suppress evidence obtained from the April 30, 2007 search pursuant to warrant to 8916 Red Cedar in Sedgwick County, Kansas (Dkt. No. 222). A second warrant was later obtained to seize items not described in the first warrant. The underlying facts regarding the search are not in question; the sole issue is whether the affidavit in support of the warrant provided probable cause for the search of the residence.

Harris argues that the detailed affidavit in support of the warrant, while it might set forth various aspects of potential criminal wrongdoing, is fatally flawed because it does not connect that activity directly to the residence that was searched. He further argues that the good faith exception is inapplicable.

The court need not resolve the potential application of the good faith exception, because it is apparent that the search was executed pursuant to a valid warrant. An application in support of

search warrant need not allege direct personal knowledge that items evidencing criminal activity are present at a given house. If the affidavit describes "circumstances which would warrant a person of reasonable caution to believe that the articles sought would be at appellant's residence, then a sufficient nexus has been established." *United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two and 43/100 Dollars*, 956 F.2d 868, 874 (10th Cir. 1992). As noted earlier, because the search was conducted pursuant to warrant, the magistrate's decision to issue a warrant is entitled to great deference. *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005).

Here, the warrant was supported by a detailed affidavit evidencing criminal activity by the defendant. Contrary to the suggestion of the defendant, the affidavit presents a colorable basis for concluding that criminal activity was connected with the residence, and that evidence of such activity could be found in the residence.

In addition to setting forth Harris's Crips-related criminal activity, the affidavit also provides information specifically as to the residence to be searched. The affidavit notes that Harris had bought a house in 2003 by paying $8,008.00 in cash, even though his reported income was less than $1794.00. On February 9, 2007, Harris completed a Uniform Residential Loan Application for a second house, and in March he completed a Uniform Residential Loan Application to buy the house at 8916 N. Red Cedar Lane, stating that this house would be the primary residence for Harris and Laqueta Peters. Further, the affidavit stated that Harris's wife had made illegal false statements in an application for SRS benefits.

> The affiant further stated that, based on his knowledge and experience
>
> personal effects, personal and/or financial records, and business records related to Step by Step Realty, LLC, and Body Essential, Inc., will be kept and stored at 8916 Red Cedar, Sedgwick County, Kansas. Your affiant has probable cause to believe

    that these records, along with records or items disclosing the sources of income to HARRIS and/or PETERS will provide evidence of crimes, fruits of crimes, other items illegally possessed, or property designed for use, intended for use, or used in committing the crimes of 18 U.S.C. §371 (conspiracy), 18 U.S.C. § 666 (embezzlement concerning programs receiving Federal funds), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1344 (bank fraud), and 18 U.S.C. § 1962 (Racketeer Influenced and Corrupt Organizations).

(Aff. at 11.)

  The warrant specifically identified as evidence to be seized information relating to the ownership and occupancy of the house in question. Certainly such information could be reasonably expected to be found in that house. As to the other evidence obtained by the search, given the law established in cases such as *One Hundred Forty-Nine Thousand Four Hundred Forty-Two and 43/100 Dollars*, the government is not required to prove direct personal knowledge that evidence is located in a given residence. It is sufficient if the government sets forth probable cause to believe criminal activity has occurred, and that evidence of such activity is likely present in a given location. *See United States v. Reyes*, 978 F.2d 380, 382 (10th Cir. 1986) (upholding search of drug defendant's house in the absence of any "specific link to his residence" since "[i]t is reasonable to assume that certain types of evidence would be kept at a defendant's residence and an affidavit need not contain personal observations that a defendant did keep such evidence at his residence"). The defendant's motion is denied.

**H. Motions for Discovery**

Defendant Knight also has two motions for discovery before the court. (Dkt. Nos. 190, 192). First, Knight seeks exculpatory information under *Brady v. Maryland*, 373 U.S. 83 (1963).

Specifically, Knight requests (a) all police reports "showing dispute, conflicts, or instances of violence or other criminal activity between members of various sets and/or subsets of 'the Crips;'" (b) "[g]ang information, including but not limited to gang information sheets on all defendants, witnesses, co-conspirators, confidential informants and cooperating witnesses, in this and the companion case, identified as belonging to 'the Crips;'" (c) "[a]ll reports of law enforcement surveillance of the alleged gang meetings in Grove Park;" and (d) any impeachment information of government witnesses, pursuant to *Brady* and *Giglio v. United States*, 405 U.S. 150 (1972) (See Dkt. No. 191). Knight argues that the Crips are not a unified entity, and that the police reports of violence between gang members would help support this argument. He acknowledges he has received a redacted gang information sheet with respect to himself, but requests unredacted sheets for anyone the government has designated a gang member. He requests as well information concerning the software used to generate the reports.

In the second motion, Knight relies on Fed.R.Crim.Pr. 16, seeking (a) information relating to "all counts and all Racketeering Acts charged in the Indictment"; (b) incident reports from the September 16, 2004 search warrant of 1332 N. Volutsia, including a statement implicating Knight made by a person present at the scene while officers were executing the search; (c) any statements by co-defendants or co-conspirators, (d) a list of the search warrants executed in this case and in Case No. 07-10142-JTM. Defendant Little has joined in both motions.  (Dkt. Nos. 232, 233).

The government opposes the first motion, arguing generally that none of the information sought is exculpatory. With respect to the specific items requested by Knight, the government first argues that the evidence cannot be produced, because the police reports have not been indexed for each mention of potential gang membership. Because the city's computerized gang information cannot reproduce "snapshots" of the data at some previous time, there was no recorded surveillance of the Grove Park meetings. It states that it will produce impeachment information in a timely fashion.

More importantly, with respect to the first two items of evidence sought, the government contends the evidence simply is not *Brady* material. As to evidence of violence within subsets of the Crips gang, the government argues that it has never contended that the Crips are some rigidly monolithic organization. Rather, the allegation is that while the Crips may share a general criminal purpose, they are nevertheless a organization dedicated to the use of violence among its members as well as to third parties. Regarding the computer gang information sheets, the information is not exculpatory because a negative result as to a gang member's "active" status is not proof that the individual does not belong to the gang - it is merely an indication that the police do not have any information to support such a conclusion.

The government opposes Knight's second motion, contending that there is no authority requiring the current production of co-defendant statements, and that contrary to Knight's suggestion, the United States has raised no objection to individual defendants sharing information as to their own statements. The government states that it has supplied information as to the search of 1332 N. Volutsia, while at the same time stating that, due to the identification of the witness present at the scene of the search, that witness was subsequently the subject of prison violence. It

states that search warrants may be obtained from other counsel, the magistrate judge's offices, or by searching ECF. It states that pursuant to the Jencks Act, 18 U.S.C. § 3500, it will produce information as prior statements after the relevant witness testifies.

The court will deny the motions for discovery. The court finds either that the information has already been provided to the defendants, is available to them through means other than discovery, or the law does not support a requirement of discovery. Specifically, the court finds that the information is not relevant, exculpatory evidence, required under *Brady*, nor is it material which must be produced under Rule 16.

IT IS ACCORDINGLY ORDERED this 28th day of August 2008 that the Defendant Anderson's Motions for Review of Detention Order, Change of Venue, Bill of Particulars, for Information, for Appointment, for Transfer (Dkt. No's 79, 188, 132, 134, 208, 188), Defendant Knight's Motions for Bill of Particulars, for Suppression, for Transfer, for a Juror Questionnaire, for Information, for Discovery (Dkt. No's 121, 154, 155, 196, 209, 197, 190, 192), Defendant Little's Motions for Review of Detention Orders, for Transfer, for Discovery (Dkt. No's 164, 231, 232, 233), Defendant Randall's Motion for Bill of Particulars (Dkt. No. 201), and Defendant Harris's Motion for Suppression (Dkt. No. 222) are hereby denied. The Motions for Extension of defendants Anderson, Knight, Harris, and Little (Dkt. No's 194, 195, 199, 234, 216) are granted as provided herein.

s/ J. Thomas Marten  
J. THOMAS MARTEN, JUDGE