IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>    vs.<br><br><br>TOMMY L. ANDERSON, Sr.,<br>   a/k/a "Insane Tommy,"<br>MARCUS BENTLEY,<br>   a/k/a "Breed,"<br>TRACY HARRIS,<br>   a/k/a "T Dog,"<br>CLINTON A.D. KNIGHT,<br>   a/k/a "Tone,"<br>ARMAND LITTLE,<br>   a/k/a "Clown,"<br>STEVEN S. NOVOTNY,<br>   a/k/a "Loco,"or "Little Loco,"<br>CHESTER RANDALL, Jr.,<br>   a/k/a "Insane June,"<br>TRENA R. RIDGE,<br>   a/k/a "Blue,"<br>    Defendants. | Case No's 07-10143-01, -02, -03, -04,<br>  -05, -06, -07, -08-JTM |

MEMORANDUM AND ORDER

Several of the motions now outstanding were addressed to the court in the hearing conducted September 15, 2008. For the reasons stated herein and at the hearing, the court enters the following order resolving those motions.

**Motions to Strike Juvenile Predicate Acts. Dkt. No's 242, 247.**

Defendants Little (Dkt. No. 242) and Harris (Dkt. No. 247) have both moved to strike portions of the Superseding Indictment alleging predicate acts which occurred while they were juveniles. In addition, Harris has moved to join in Little's Motion. (Dkt. No. 288). Specifically, Little notes that Predicate Act 5 in Count 1, which alleges possession of marijuana with intent to distribute, sets forth facts which occurred on August 8, 1998, when he was sixteen years old. Harris notes that Predicate Acts 2 and 3 in Count 1 allege events occurring when he was (respectively) sixteen and seventeen years old.

Both defendants advance similar arguments: that these were acts of juvenile delinquency rather than offenses against the United States, and thus cannot constitute a predicate act to a RICO charge. They contend that the acts are juvenile offenses under the Juvenile Delinquency Act (JDA), 18 U.S.C. § 5031, and thus cannot be valid predicate acts under RICO, since that statute defines relevant predicate acts to include

> any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States....18 U.S.C. §1961(1)(D).[1]

---

[1]Section 5032 provides that most offenses by juveniles will be addressed through means other than criminal prosecution, but generally tendered to state authorities. However, the statute also provides an exception allowing for criminal prosecutions for certain crimes of violence or drug offenses, following a certification by the United States Attorney General:

> A juvenile alleged to have committed an act of juvenile delinquency, other than a violation of law committed within the special maritime and territorial jurisdiction of the United States for which the maximum authorized term of imprisonment does not exceed six months, shall not be proceeded against in any court of the United States unless the Attorney General, after investigation,

Reciting the general standards of the JDA, the defendants then infer that a mere juvenile offense is not "punishable under any law of the United States."

Defendants cite no cases in support of their statutory reading. The court's review indicates that numerous cases have addressed the issue; all have held that a prior juvenile offense may support a RICO criminal prosecution, so long as, as alleged here, the earlier offense is part of a criminal conspiracy which continues into adulthood.

The issue was discussed extensively by the Second Circuit in *United States v. Wong,* 40 F.3d 1347 (2d Cir. 1994). In that case, two defendants challenged their RICO convictions on the grounds that they were juveniles when some of the predicate acts occurred. The district rejected this argument and the Second Circuit affirmed, holding that the argument was without merit because the defendants were charged with a conspiracy that continued into adulthood: "[b]ecause the RICO offenses were not 'committed by a [defendant] prior to his eighteenth birthday,' § 5031, these offenses are not subject to the requirements of the JDA." *Wong*, 40 F.3d at 1365.

---

certifies to the appropriate district court of the United States that (1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the State does not have available programs and services adequate for the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony or an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), or section 1002(a), 1003, 1005, 1009, or 1010(b)(1), (2), or (3) of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 953, 955, 959, 960(b)(1), (2), (3)), section 922(x) or section 924(b), (g), or (h) of this title, and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction.
    If the Attorney General does not so certify, such juvenile shall be surrendered to the appropriate legal authorities of such State. For purposes of this section, the term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States.

The court continued:

> It is well established that federal courts have jurisdiction over conspiracies begun while a defendant was a minor but completed after his eighteenth birthday. "The [JDA] does not ... prevent an adult criminal defendant from being tried as an adult simply because he first became embroiled in the conspiracy with which he is charged while still a minor...." *United States v. Spoone*, 741 F.2d 680, 687 (4th Cir.1984), *cert. denied*, 469 U.S. 1162, 105 S.Ct. 917, 83 L.Ed.2d 929 (1985); *see also* [*United States v.*] *Welch*, 15 F.3d [1202,] 1207 n. 5 [(1st Cir. 1993)] ("the [JDA] cannot be read to preclude an adult conspiracy prosecution simply because the accused's participation in the conspiracy began while he was under age eighteen"); *United States v. Maddox*, 944 F.2d 1223, 1233 (6th Cir.1991) ("one who enters a conspiracy prior to his eighteenth birthday can be tried as an adult if he continues in the conspiracy after that time"), *cert. denied*, [502 U.S. 950 (1991), and 502 U.S. 1063] (1992), *modified*, 12 F.3d 599 (6th Cir.1993), *cert. denied*, 510 U.S. 1206, 114 S.Ct. 1328, 127 L.Ed.2d 675 (1994); *United States v. Harris*, 944 F.2d 784, 785-86 (10th Cir.1991) (*same*), *cert. denied*, 502 U.S. 1044, 112 S.Ct. 903, 116 L.Ed.2d 804 (1992); *United States v. Doerr*, 886 F.2d 944, 969 (7th Cir.1989) (*same*) (*quoting United States v. Cruz*, 805 F.2d 1464, 1475 (11th Cir.1986) (*quoting Spoone*, 741 F.2d at 687), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 204, 482 U.S. 930, 107 S.Ct. 3215, 96 L.Ed.2d 702 (1987)); *United States v. Gjonaj*, 861 F.2d 143, 144 (6th Cir.1988) (*same*) (*quoting Spoone*, 741 F.2d at 687). Because conspiracy is a continuing crime that "endures until its objectives are either completed or abandoned," *United States v. Lovell*, 16 F.3d 494, 497 (2d Cir.1994), a federal court may assume jurisdiction over a defendant "'upon a "threshold demonstration of post-eighteen conspiracy activity."'" *Maddox*, 944 F.2d at 1233 (*quoting Gjonaj*, 861 F.2d at 144 (quoting *Cruz*, 805 F.2d at 1476)).

*Id.* at 1365-1366.

The court also rejected the defendants' argument that there could be not prosecution because the Attorney General had not formally certified the juvenile predicate acts for prosecution:

> Finally, Wong argues that because the government did not move to transfer his case to adult status, his pre-eighteen acts should properly have been considered acts of juvenile delinquency, and thus did not constitute "racketeering activity" as defined in the RICO statute because they were not "punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1). We disagree.
> . . . .
> The possibility that, as a juvenile, Wong would have avoided incarceration is "wholly irrelevant," *United States v. Coonan*, 938 F.2d 1553, 1564 (2d Cir.1991), cert. denied, 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992), to the question whether the underlying conduct satisfies the definition of racketeering activity set

4

> forth in § 1961(1)(A). The statutory definition is met if the charged conduct *generally* is punishable by one year of incarceration under state law. *See Coonan*, 938 F.2d at 1564 (§ 1961(1)(A) "merely describes the type of generic conduct which will serve as a RICO predicate and satisfy RICO's pattern requirement."); *United States v. Friedman*, 854 F.2d 535, 566 (2d Cir.1988) ("New York's rules governing double jeopardy and consecutive sentencing do not affect the generic definition of the crime of bribery."), *cert. denied*, 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989); *United States v. Paone*, 782 F.2d 386, 393 (2d Cir.1986) ("The [RICO] statute is meant to define, in a more generic sense, the wrongful conduct that constitutes the predicates for a federal racketeering charge."), *cert. denied*, 479 U.S. 882, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986), 483 U.S. 1019, 107 S.Ct. 3261, 97 L.Ed.2d 761 (1987).

Id. at 1367-68 (emphasis in original).

The decision in *Wong* reflects federal case law generally. *See United States v. Welch*, 15 F.3d 1202, 1207-10 (1st Cir. 1993); *United States v. Davilla*, 911 F.Supp. 127 (S.D.N.Y. 1996); *United States v. Wai Ho Tsang*, 632 F.Supp. 1336 (S.D.N.Y. 1986). More importantly, the reasoning adopted in *Wong* was also adopted by the Tenth Circuit in *United States v. Delatorre*, 157 F.3d 1205 (10th Cir. 1998).

In *Delatorre*, the court reviewed the relevant caselaw and concluded that "a jury may not convict an adult defendant *solely* on the basis of 'acts of juvenile delinquency.'" 157 F.3d at 1209 (emphasis in original). Rather, the court held a RICO substantive or conspiracy charge can be based on some juvenile predicate acts, so long as there is "some demonstration of post-eighteen participation in such crimes." *Id.* The court reversed the district court's conclusion that evidence of a juvenile offense was admissible only under Fed.R.Evid 404(b); instead, the court held, such juvenile offenses were directly admissible as the defendant's substantive guilt:

> We find nothing in the JDA's language or legislative history, however, which affords any special protection to a defendant properly indicted as an adult whose participation in alleged continuing criminal activity spans his eighteenth birthday. The JDA simply does not address the admissibility of evidence in such cases.....
> [W]e agree with the First, Fifth, Seventh, and Eleventh Circuits that where an adult defendant is properly charged with a continuing crime, that defendant's

5

>pre-majority conduct is admissible on the same basis as post-majority conduct. *Welch*, 15 F.3d at 1202; [*United States v.*] *Wilson*, 116 F.3d [1066,] 1066 [(5th Cir. 1997), *cert. denied sub. nom. Bates v. United States*, 522 U.S. 1053 (1998)]; *Doerr*, 886 F.2d at 944; *Cruz*, 805 F.2d at 1464. As the First Circuit aptly stated in *Welch*, 15 F.3d at 1211 n. 11: "[I]n an age-of-majority spanning conspiracy [or racketeering enterprise], the defendant's pre-majority conduct is not merely extrinsic evidence of a prior wrongful act, but an integral component of the alleged ... [crimes] for which he is on trial." In the absence of an express legislative directive to the contrary, we believe the JDA does not apply to a defendant like Delatorre who is not a juvenile and has not been charged with committing an act of juvenile delinquency. The Government may prosecute Delatorre as an adult in accordance with federal evidentiary and procedural rules so long as the Government establishes that Delatorre participated in the continuing crimes with which he is charged beyond his eighteenth birthday.

Id. at 1210-11 (footnote omitted).

In light of the foregoing caselaw, the court finds that the defendants' motions to strike should be denied.

**Motion for Continuance. Dkt. No. 294.**

Defendants cite the volume of material recently supplied by the government, including (a) some 600 additional pages of investigative reports as to cooperating witnesses, (b) 30 hours of taped interviews, only one of which was transcribed, and (c) the large number of the government's gang experts. (Dkt. No. 294 at ¶¶ 3, 7). The defendants also note the extension accorded the government to supply further information as to the gang experts' reports. Finally, the defendants also note generally the seriousness and the complexity of charges involved, the voluminousness of information previously supplied by the government, and the necessity of further 404(b) inquiries. (Id. at ¶¶ 5, 8, 9).

The government response states that although most of the interviews were not transcribed, this was because the interviewing officers wrote reports summarizing the interviews, and that these

6

summaries are a part of the materials provided to the defendants. (Dkt. No. 297 at ¶ 1). It further states that much of the additional material is transcripts of grand jury testimony by non-gang witnesses. (Id. at ¶ 2). It states that it has supplied material as to testifying witnesses well in excess of what would be required under Jencks, and notes that no defendant filed any written objection to the court's November 1, 2007 designation of the case as complex. (Id. at ¶¶ 3, 6). Following the designation of the case as complex, the present trial date was adopted by the court on January 16, 2008.

The new material cited in the defendants' motion is substantial, but at the same time measurement by page length alone can be misleading, and the court finds that the disclosures are not a intolerable burden. Nothing prevents the defendants from pooling resources to transcribe the taped interviews, or to outsource such transcription under appropriate restrictions.

While the court has given a brief extension to further elaborate as to the gang experts' reports, it must also be noted that the extension was solely for the government to break down the "collective" report it previously submitted and provide further elaboration as to which witness will supply which opinions. The court has already specifically ruled that substance of the earlier report, with its description of gang organization and practices, complies with Rule 16 (Dkt. No. 283, at 13). The defendants have been in possession of that information for some time,[2] and that report provided the basis to begin preparation for the submission of any *Daubert* challenge.

The remaining points presented by the defendants do not represent any change in the circumstances of the case at the time the court previously denied defendant Knight's Motion for

---

[2] The letter supplying the expert's proposed testimony (Exhibit 1 to Defendant Knight's Memo in Support of his Motion for Proffer, Dkt. 218) is dated August 12, 2008.

7

Continuance. The seriousness and complexity of the case will remain whether the case is tried next month or next year. The court is not unmindful of the practical difficulties presented by the currently scheduled trial, but finds that the schedule is necessary and does not conflict with the ability of the court to conduct a fair trial for all of the accused.

The motion for continuance is denied.

**Motion to Adjust Conditions of Release. Dkt. No. 287**

The court previously granted Knight's May 8, 2008 motion for release, stipulating that Knight remain under house arrest and maintain employment. (Dkt. No. 141.) The order provided that Knight may be out of the house during work hours; during appointments with counsel and his pretrial services officer; from 10:00 a.m. to 2:00 p.m. on Sundays for church services; to attend a mandatory class at Options on Tuesday evenings; and four "free" hours per week. His current motion requests additional time "attending his children's school and sport activities, and simply spending time as a family." (Dkt. No. 287, at ¶ 6). The motion states that "the Knights have four young children who have a variety of after-school and extracurricular activities, including football and gymnastics. Football practices are in the evenings from 6-8 p.m., with games on Saturdays. Gymnastic classes are from 10-11:30 a.m. on Saturdays." (Id. at ¶ 4).

The court acknowledges the burden of the court's requirements on the Knights' family life. Pursuant to the court's statements at the hearing, the court will permit defendant two additional hours of family time per day. Counsel is directed to consult with probation services and submit to the court any recommendations which are consistent with these directions, along with any further specific language for modification of the court's previous order.

**Motion to Suppress Search of 1008 S. Lively. Dkt. No. 254.**

Defendant Knight moves to suppress evidence obtained from the May 1, 2007 search of his home at 1008 S. Waverly. Knight contends that the warrant lacked probable cause that evidence was located at the address in question. Specifically, Knight argues that (1) the affidavit in support of the warrant failed to show the three informants were reliable, (2) the evidence was stale, and (3) the evidence did not show a connection with the residence in question. Knight also argues that there was no basis for any objective good faith reliance on the supposedly defective warrant, and any evidence later derived from what was learned from the search should also be suppressed.

The search was conducted pursuant to a warrant issued by United States Magistrate Judge Donald Bostwick. The warrant was supported by a lengthy (117 page) affidavit submitted by Sedgwick County Sheriff's Detective Officer Ron Goodwyn.

As noted, Knight first attacks the sufficiency of the affidavit because the informants supplying information are not identified. However, Knight's argument places excessive reliance on language from the Supreme Court's opinion in *Illinois v. Gates*, 462 U.S. 213 (1983), where the Court recognized that corroboration of an informant's testimony is important, because "an informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value of his report." *Id.* at 230. But while such information is certainly important, this does not mean that it is in all cases a *sine qua non* for a finding of probable cause. To the contrary, the Court stressed in *Illinois v. Gates* that ultimately "probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules," 462 U.S. at 232, and as a result the court must look to the totality of the circumstances of the case in determining whether probable cause for a search existed. *Id*. at 238. As

9

a result, "a deficiency in one [factor] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id* at 233.

As this court noted in a prior order (Dkt. No. 256, at 12), the strong preference for searches conducted pursuant to warrant generates the corollary rule that, if magistrate has issued a warrant, the decision should be reviewed with great deference. *See United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005). Applying that standard here, the court finds no error in the issuance of the warrant. The affidavit supplied ample probable cause for that issuance.

First, although the three individual informants are not identified, the separate informants corroborated each other as to their allegations (that Knight is a leader of the Duece Trey Crips gang). The informants' allegations were further corroborated by Knight's criminal history. Having reviewed the affidavit submitted by Detective Goodwyn, the magistrate reasonably decided that probable cause existed for the warrant.

As noted earlier, Knight also argues that the affidavit lacks probable cause to support a search in 2007, because "[m]uch of the information in the affidavit was stale." (Dkt. No. 255, at 7). Knight proceeds to note many of the factual allegations in the affidavit refer to events in the 1990s, including an allegation that he was involved in a fight while attending a high school in 1994, convicted as juvenile of possession of drug paraphernalia in 1997, and that a search warrant for narcotics was executed on the house where he lived with his mother in 1995.

If these were the only incidents recited in the affidavit, the defendant's argument would be compelling. But the defendant has picked from the lengthy affidavit only the oldest incidents relevant to himself in the lengthy affidavit. The antiquity of the instances cited by defendant do not establish that the information in the affidavit was stale; rather it indicates the longevity of the defendant's

apparent gang career. When coupled with other evidence in the affidavit demonstrating that Knight maintained his affiliation with and participation in Crips gang activity in Wichita, the magistrate accurately determined that there was probable cause to believe that the defendant was currently engaging in the criminal activity alleged in the affidavit.

Finally, Knight argues that the evidence should be suppressed because of an absence connecting the allegations in the affidavit to the geographic target of the search, Knight's residence. He stresses that the informants did not tell the officers that any criminal activity had actually occurred inside the house on South Waverly, or that they themselves had ever been in the house.

Under *United States v. Rowland,* 145 F.3d 1194, 1203 (10th Cir. 1998) and *United States v. Beck*, 139 Fed.Appx. 950 (10th Cir. 2005), probable cause to search a person's residence does not arise based only upon probable cause merely because that the individual is guilty of a crime; there must be additional evidence linking the individual's residence to the suspected criminal activity. But this does not mean that a magistrate may not make reasonable inferences about the likelihood of evidence at a defendant's home, based upon the totality of the circumstances reflected in the affidavit.

Again as noted in an earlier order by this court in the present action, an affidavit in support of "a search warrant need not allege direct personal knowledge that items evidencing criminal activity are present at a given house." (Dkt. No. 256, at 14). It is sufficient if the affidavit describes "circumstances which would warrant a person of reasonable caution to believe that the articles sought would be at appellant's residence, then a sufficient nexus has been established." *United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two and 43/100 Dollars*, 956 F.2d 868, 874 (10th Cir. 1992). *See also United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997).

The court finds that the affidavit presented a sufficient basis for inferring that evidence of criminal activity would likely be found in Knight's residence. "It is reasonable to assume that certain types of evidence would be kept at a defendant's residence and an affidavit need not contain personal observations that a defendant did keep such evidence at his residence." *United States v. Reyes*, 978 F.2d 380, 382 (10th Cir. 1986). Here, the affidavit specifically stated that, based on the affiant detective's experience and training, evidence of gang activity would likely be found in a gang leader's home. The warrant sought non-perishable evidence of gang activity (clothing, documents, firearms) which under the circumstances a reasonable person might expect to be found in the defendant's home. The defendant's motion to suppress will be denied.

**Motion to Suppress Cell Phone Information. Dkt. No. 275.**

Defendant Knight was arrested in the driveway of his residence at 1008 S. Waverly, when he came home shortly after 4:00 in the afternoon on July 30, 2007. Police officers conducting surveillance of the house parked behind Knight's vehicle and conducted the arrest. Incident to the arrest, officers conducted a search of the vehicle, and retrieved Knight's cell phone. Knight was taken to the downtown Wichita police station, and his vehicle left at the scene.

At the station, Knight was interviewed by Detectives Relph and Elmore. At the end of the interview, Knight was taken to the Sedgwick County Jail. Detective Elmore copied down the contact list and numbers from Knight's cell phone.

In his motion, Knight contends that the phone was not validly seized as a search incident to arrest,, since it was not close in time to the arrest, and was not a search premised on removing weapons or perishable evidence from close proximity to a defendant. *See United States v. Edwards*,

242 F.3d 928, 937 (10th Cir. 2001) (a search incident to arrest "places a temporal restriction upon the police's conduct"); *United States v. Lugo*, 978 F.2d 631, 634 (10th Cir. 1992). Knight notes that one court has held that the search incident to arrest exception would not justify the search, two hours after the arrest and at a DEA office, of an arrestee-defendant's cell phone. *United States v. Lasalle*, 2007 WL 1390820 (D. Haw. 2007).

Knight further argues that he did not consent to the search of the cell phone, and that the seizure of the contents of the cell phone would not be justified as an inventory search, since such searches "cannot be investigatory in nature but must instead be used only as a tool to record the defendant's belongings to protect the police from potential liability." *Edwards*, 242 F.3d at 938.

The United States responds by stating that it does not intend to introduce any evidence relating to Knight's cell phone. Typically, a motion to suppress evidence which the government states it will not introduce will be denied as moot. *See generally United States v. Carrion-Soto*, No. 06-906, 2007 WL 3307023, *7 n. 7 (D.N.J., Nov. 7, 2007); *United States v. Dacunto*, No. 00-CR-620, 2001 WL 13343, *10 (S.D.N.Y. Jan. 5, 2001); *United States v. Longo*, 70 F.Supp.2d 225, 266 (W.D.N.Y.1999); *United States v. Balogun*, 971 F.Supp. 1215, 1236 (N.D. Ill. 1997). The court will deny Knight's motion as moot.

**Motion to Suppress Evidence of Stop and Frisk. Dkt. No. 202.**

Defendant Anderson has moved (Dkt. No. 202) for suppression of evidence obtained in connection with the stop and frisk of Anderson on November 29, 2006. Specifically, he wants suppression of any physical evidence gained from the encounter, as well as any observations by the police. Prior to the hearing on the present matter, the government indicated that it intends to dismiss

the charges relating to the incident. Accordingly, the court will deny Anderson's motion to suppress as moot.

**Motion to Strike Surplusage. Dkt. No. 271.**

Defendant Knight moves for an order striking certain allegation from the Indictment, and from any pleadings submitted to the jury (a) any references to defendants who have not been apprehended or who will plead guilty prior to trial, and (b) any references to his alleged alias "Insane Tommy."

With respect to the missing or pleading defendants (Steven Novotny, Marcus Bentley, and Trena Ridge), defendant stresses that these are the only defendants alleged to have committed certain acts such as robbery or transporting underage girls across state lines. The defendant notes that under Fed.R.Cr.Pr. 7(d) the court has the power to "strike surplusage from the indictment or information" on the defendant's motion.

However, while the defendant accurately notes that the court has the power to strike information from an indictment, this power should be used only where the evidence is "both independent of and unnecessary to the offense on which a conviction ultimately rests." *United States v. Brooks*, 438 F.3d 1231, 1237 (10th Cir.2006), *citing United States v. Miller*, 471 U.S. 130, 136-37 (1985). The power should be used "only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Ailsworth*, 873 F.Supp. 1450, 1457 (D.Kan. 1994) (*quoting* 1 Charles A. Wright, Federal Prac. & Proc.§127 [1982]).

The court cannot make such a substantive finding prior to trial. All of the three absent defendants are charged with acting with Anderson as a part of a RICO conspiracy and two of them

14

---

are additionally charged as being co-conspirators with Anderson for distributing drugs. Given these close connections in the conspiracy allegations, the court cannot meet the high standard for effectively dismissing a part of the Indictment prior to trial.

As with other information in an Indictment, references to an alias may be stricken if irrelevant to the charges or prejudicial to a defendant. On the other hand, alias information is admissible in a criminal action where it will be helpful in identifying the defendants. *United States v. Skolek*, 474 F.2d 582, 586 (10th Cir. 1973).

Here, the United States contends that the "aliases" cited by defendant are not true aliases – that is, an alternative name used a means of concealing a true name – but simply nicknames. It is not apparent that this distinction has any substantial foundation. *Cf. Elson v. McCoy*, No. 96-C-3656, 1997 WL 72077, at *3 (N.D. Ill. Feb. 14, 1997), *aff'd in part and rev'd in part on other gds.*, 146 F.3d 468 (7th Cir. 1998) (an "alias, by definition, conceals a person's true identity"), *with United States v. Cofield*, No. 06-cr-208-MEF, 2007 WL 2670288, *4 (M.D. Ala. Feb. 23, 2007) (adopting standard dictionary definitions of "alias" as merely indicating an alterative name, without necessarily implying an intent to conceal).[3]

---

[3]The court wrote that

Webster's Dictionary defines the term "alias" as

> otherwise called: otherwise known as-used esp. in legal proceedings to connect the different names of anyone who has gone by or been known by two or more names; ... another name; ... an assumed name.

*Webster's New International Dictionary* 53 (3rd ed.1966 unabridged).

Black's Law Dictionary defines "alias" as "[a]n assumed or additional name that a person has used or is known by." *Black's Law Dictionary* 79 (8th

This distinction, however, is not controlling here. Whether alias or nickname, the personal cognomens adopted by the defendants are admissible at trial, and references to such terms will not be stricken from the Indictment. As noted earlier, the Tenth Circuit has approved the use of aliases where the evidence indicates that such terms were actually used and would aid in the identification of the defendant. *Skolek*, 474 F.2d at 586. Further, in *United States v. Battle*, No. 98-3246, 1999 WL 596966, *2 (10th Cir. Aug. 6, 1999), the Tenth Circuit approvingly cited the Fourth Circuit's holding in *United States v. Clark*, 541 F.2d 1016 (4th Cir.1976) that "a pretrial motion to strike an alias mentioned in the indictment should not be granted if the government intends to introduce evidence that a defendant used a particular alias in the commission of the crime charged." The court in *Battle* concluded that the district court's decision to permit the use of an alias was appropriate:

> We recognize that courts have held that only when proof of an alias is relevant to identifying a defendant should a court allow its inclusion in the indictment and its subsequent introduction at trial. *See, e.g., United States v. Wilkerson*, 456 F.2d 57, 59 (6th Cir.1972). Here, however, proof of the use of the alias "Black" helped identify Battle as a participant in the conspiracy. In this general regard, counsel have not drawn our attention to any reported case where a conviction has been overturned because of a court's failure to strike an alias from the indictment.

Id. at *2-3.

Here, the government affirmatively represents that evidence will show that the given aliases were used within the gang and the use of those names will aid in the identification of the defendants as members of the conspiracy. The court will not grant the motion to strike.

---

ed.2004).

2007 WL 2670288, at *4.

**Motion for Participation in all aspects of Juror Selection. Dkt. 284.**

The defendants have submitted a joint motion for active participation in all aspects of the juror selection process. Specifically, the defendants request active presence and participation in any process by which potential jurors are excluded from the case for hardship purposes. The defendants acknowledge that contrary authority exists. *United States v. Greer*, 285 F.3d 158, 167-68 (2nd Cir. 2002). The court will deny the defendants' request. Eight jurors have been excused from the present pool for hardship reasons, reasons which would have justified excuse whether or not counsel were then present and participating in the process. The information as to the remaining potential jurors, including additional persons also requesting hardship excuse, has been supplied to or made available to counsel.

IT IS ACCORDINGLY ORDERED this 16th day of September, 2008, that the defendant Knight's Motion to Adjust Conditions of Release (Dkt. No. 287) is granted as provided herein, his Motion for Suppression (Dkt. No. 254) is denied, his second Motion for Suppression (Dkt. No. 275) is denied as moot; defendant Little's Motion to Strike (Dkt. No. 242) is denied; defendant Harris's Motion to Strike (Dkt. No. 247) is denied; the court grants Harris's Motion to Join in Little's Motion to Strike (Dkt. No. 288); the collective defendants' Motions for Continuance and for Participation (Dkt. No's 294, 284) are denied; defendant Anderson's Motion to Suppress (Dkt. No. 202) is denied as moot; his Motion to Strike (Dkt. No. 271) is denied.

                                                    s/ J. Thomas Marten
                                                    J. THOMAS MARTEN, JUDGE